UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:24-CR-184-2 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| KING STEVENSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Defendant King Stevenson ("Defendant" or "Stevenson") appeals Magistrate Judge Armstrong's January 13, 2025 Detention Order. (Doc. 74.) The government timely opposed the motion. (Doc. 79.) For the reasons stated below, the motion is DENIED.

**I.    Background**

    **A.    Complaint Affidavit and Indictment**

On May 30, 2024, a federal grand jury returned an indictment charging Stevenson with one count of conspiracy to distribute and possess with intent to distribute fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(C) and one count of use of a communications facility to facilitate a felony drug offense in violation of 21 U.S.C. § 843(b). (Doc. 1.) A warrant for Stevenson's arrest was issued. On August 7, 2024, Stevenson was arrested on the warrant in the District of Arizona.

On September 20, 2024, Stevenson appeared for arraignment in this District at which time he waived a detention hearing. (Doc. 36.) On October 10, 2024, Stevenson moved for reconsideration of the detention order. (Doc. 50.) The matter was referred to the magistrate

judge, and a detention hearing was held.[1] At the hearing, Pretrial Services Officer Yolanda Garth testified, facts were proffered, exhibits were admitted, and both parties presented argument. Magistrate Judge Armstrong took the matter under advisement. On January 13, 2025, she issued the Detention Order. (Doc. 72.)

### B. Pretrial Services' Recommendation

The report prepared by the Pretrial Services Department ("Report") determined that Stevenson was both a risk of flight and a danger to the community.[2] (Doc. 78, Ex. 2 at 6.) After evaluating conditions sufficient to mitigate non-appearance and danger to others, Stevenson was recommended for release with 10 specified conditions. (*Id.* at 6–7.) This District's InterCourt Memorandum ("Memo") concurred. (Doc. 78, Ex. 3.)

### C. Detention and Hearing

At the detention hearing, the government proffered facts specific to Stevenson's involvement in the charged conspiracy. (Doc. 78 at 357.) Stevenson arranged for large shipments of fentanyl pills which were colored blue and stamped to look like prescription oxycodone. (*Id.* at 359.) He was the Arizona supplier for the fentanyl pills. (*Id.* at 358–59.) Stevenson's co-defendant, Reginald McCurdy, then distributed, directly and through others, in and around the Cleveland area. (*Id.*) On or about January 6, 2022, Stevenson mailed a package from Arizona to McCurdy in Cleveland. (*Id.* at 357.) The package contained 136 blue fentanyl pills. (*Id.* at 359.)

Drug proceeds were deposited into bank accounts Stevenson controlled. (*Id.*) Stevenson

---

[1] Due to then-defense counsel's health issues and the appointment of new defense counsel, the hearing to address Stevenson's continued detention was held on January 10, 2025.

[2] The government proffered the Report as Exhibit 2 at the detention hearing. Citations to the Report will therefore be cited as "Doc. 78, Ex. 2."

directed others' involvement in trafficking activity and the manner of depositing his proceeds from such activity. (*Id.*) Some deposits were made at ATMs in Cleveland for Stevenson's use in Arizona. (*Id.* at 362.) Deposit amounts would be around $5,000. (*Id.* at 359.) Such amounts were intentionally insufficient to avoid bank reporting and documentation requirements. (*Id.*)

Stevenson was interviewed by law enforcement. He acknowledged prior affiliations with a Mexican cartel, including that a cartel paid him approximately $700,000 in connection with drug trafficking. (*Id.* at 369–70.) Stevenson further acknowledged that the search of his phone may include text messages with cartel members. (*Id.* at 370.) To the government, these admissions generally coincide with his trips to Mexico. (*Id.* at 372–73.)

A search of Stevenson's phone revealed text messages with an individual seeking to buy kilograms of drugs from Stevenson. (*Id.* at 370.) Messages also revealed separate transactions for 41,000 fentanyl pills, a kilogram of cocaine, and two pounds of methamphetamine. (*Id.* at 371.) One particular message to McCurdy, this time with the phrase "I'm ready," included a photograph of at least four bags full of what appear to be blue fentanyl pills pressed to look like prescription drugs. (*Id.* at 373, Ex. 9.) Messages also corroborate Stevenson's control over drug sale pricing and bank deposit instructions.

A search of Stevenson's Arizona home, which he shared with his wife and five minor children, resulted in the seizure of five loaded firearms, ammunition, numerous smartphones, and $900 in cash. (Doc. 78 at 369.)

Stevenson called Officer Garth to testify. (*Id.* at 376.) Officer Garth is one of this District's Pretrial Services officers. (*Id.*) Officer Garth addressed specific entries in the criminal history portion of the Report, namely those that resulted in dismissals. (*Id.* at 378.) Officer Garth also confirmed that she was unaware of any change in Stevenson's circumstances between

the time he was assessed by Pretrial Services in Arizona and the time he arrived in Cleveland. (*Id.* at 380.)

On cross-examination, Officer Garth stated that she viewed Stevenson as a risk of flight and a danger to the community. (*Id.* at 381.) She also explained that Pretrial Services officers, whether they be in Arizona or Ohio, do not take into account the circumstances of the offense conduct when making recommendations to the Court. (*Id.* at 382.) Pretrial Services officers are instructed that it is the responsibility of the judicial officer to review and consider the underlying offense conduct in assessing whether a defendant may be released pending trial. (*Id.*)

D. **Detention Order**

Magistrate Judge Armstrong found the narcotics offenses alleged prompt the statutory rebuttable presumption. (Doc. 72 at 318; Doc. 78 at 351–52.) She also determined that Stevenson presented evidence to rebut the presumption thereby prompting a full review of the Section 3142(g) factors. (Doc. 72 at 318.) After considering all applicable factors, Magistrate Judge Armstrong concluded that the government met its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. (*Id.* at 318–19.) In addition to checking each of the factors supporting her conclusion, Magistrate Judge Armstrong included a written narrative highlighting certain underlying facts, including that the offense conduct includes fentanyl, numerous loaded firearms, Stevenson's prior convictions for violent offenses, and that his alleged involvement in what appears to be a large-scale drug trafficking organization. (*Id.* at 319.)

E. **Parties' Positions on Appeal**

Stevenson reasserts the government's failure to establish he is a risk of non-appearance or

demonstrate by clear and convincing evidence that conditions or combination of conditions cannot "reasonably [] assure" the safety of others. (Doc. 74 at 322.) To him, the magistrate judge did not correctly assess the § 3142(g) factors, nor did she fully consider the myriad of conditions to be imposed that would ensure Stevenson's appearance and properly mitigate and concerns about the safety of others and the community. (*Id.* at 325–27.)

In opposition, the government highlighted many of the same facts argued at the January 10, 2025 Detention Hearing, but focused on the absence of conditions or any combination of conditions to be imposed that could reasonably assure the safety of others and the community. (Doc. 79 at 404.)

**II.    Analysis**

Title 18, United States Code, Section 3145(b) provides, in pertinent part, as follows:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

District courts review a magistrate judge's release or detention order *de novo*, meaning that the district court makes an independent determination as to whether any condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community. *United States v. Johnson*, No. 22-cr-390, 2022 WL 2800242, 2022 U.S. Dist. LEXIS 127146, at *4–5 (N.D. Ohio July 18, 2022); *United States v. Trent*, No. 21-cr-516, 2022 WL 44663, 2022 U.S. Dist. LEXIS 2339, at *4 (N.D. Ohio Jan. 5, 2022).

Under the Bail Reform Act ("Act"), "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'"

*United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)). The statutory framework for analyzing whether release is proper requires weighing four specific factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involved a minor victim or controlled substance, firearm, explosive, or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –
>
> > (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The government bears the burden of proving dangerousness by clear and convincing evidence. *Stone*, 608 F.3d at 946.

As part of its *de novo* review, the Court has reviewed the following:

1. Indictment (Doc. 1);

2. District of Arizona Pretrial Services Report (Doc.78, Ex. 2);

3. Northern District of Ohio Pretrial Service Memorandum (Doc. 78, Ex. 3);

4. Detention Hearing transcript (Doc. 78);

5. Defendant's appeal of the Detention Order (Doc. 74); and

6. Government's response in opposition (Doc. 79).

The parties acknowledge the statutory presumption of detention in this case. *See* 18 U.S.C. § 3142(e)(3)(A); (Doc. 78 at 351). The charges involve possession and intended distribution of fentanyl, an exceptionally dangerous drug. This presumption can be and has been rebutted. The Report identifies possible conditions that could reasonably assure the safety of others. (Doc. 78, Ex. 2 at 6–7.) Stevenson's wife has indicated he can return to his Arizona home and reside with her and his children. (*Id.* at 2.) The Court now evaluates each Section 3142(g) factor.

      **A.**      **Nature and Circumstances of the Offense Charged**

As detailed above, the offense conduct involves Stevenson allegedly shipping large quantities of narcotics, primarily fentanyl pressed to look like prescription drugs, to a co-defendant in the Cleveland area. (Doc. 1 at 2; Doc. 78 at 358–59.) Stevenson set the price for sale. (Doc. 78 at 372.) Proceeds were deposited into accounts he controlled and in amounts he determined. (*Id.* at 359.) Many of these deposits were made in Cleveland so that Stevenson could access the funds while remaining in Arizona. (*Id.* at 362.) A search of his phone revealed messages strongly indicative of playing a managerial role, perhaps even a leadership role, in a large-scale drug trafficking organization. (*Id.* at 361, 370, 373–74.) Several loaded firearms were found at his home when law enforcement officers executed a search warrant. (*Id.* at 369.) This factor weighs in favor of detention.

      **B.**      **Weight of the Evidence Favoring Release**

In assessing the weight of the evidence, it is important to note that Stevenson is presumed innocent of all charges presented in the Indictment. This factor focuses the Court on the weight of the evidence relating to release, not offense conduct. *Stone*, 608 F.3d at 948 ("This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt.").

Stevenson was living with his wife and children at the time of the offense conduct. (Doc. 78, Ex. 2 at 2.) He has admitted connections to cartels in Mexico, and his travel to Mexico appears to align with the timeframe presented. (Doc. 78 at 366, 369–70.) The offense conduct details the level of control over co-defendants even when those co-defendants were multiple states away. (*Id.* at 361–62.) This factor weighs in favor of detention.

C.     **History and Characteristics of the Person**

Section 3142(g)(3)(A) and (B) specify the particular considerations for properly assessing this factor. Stevenson is 44 years old. (Doc. 78, Ex. 2 at 2.) He was living in Phoenix, Arizona at the time of the alleged conduct and arrest. (*Id.*) Most of his family lives in Georgia. (*Id.*) For a few years, Stevenson lived in South Carolina. (*Id.*) Stevenson has completed high school and some college. (*Id.*) He was honorably discharged from the Army Reserves in 2002. (*Id.*)

At the time of his arrest, Stevenson was the sole owner of Cobra Nutrition. (*Id.*) He stated additional employment as a body builder. (*Id.*) There are verifiable periods of employment. Stevenson filed for Chapter 13 bankruptcy in 2024. (*Id.* at 3.) He has known but untreated medical conditions. (*Id.*) Stevenson has acknowledged marijuana and alcohol use and abuse. (*Id.*) At the time of his arrest, the drug screen result was presumptively positive for marijuana and cocaine. (*Id.* at 4.) His criminal history reveals convictions for battery (two separate convictions), domestic violence, DUI, failure to appear, and failure to present identification. (*Id.* at 4–6.) There are no elevated felony offenses of federal offenses in his criminal history. (*Id.*)

In assessing a person's history and characteristics in the context of pretrial release, their admissions can be considered in an evaluation of their character. *United States v. King*, No. 22-cr-60, 2022 WL 3645996, 2022 U.S. Dist. LEXIS 152150, at *10–11 (E.D. Tenn. Aug. 24, 2022)

(considering prior admissions). Stevenson acknowledged associating with cartel members in Mexico. (Doc. 78 at 366, 369–70.) He also acknowledged photographs and text messages appearing to corroborate his involvement in a large-scale, multi-state drug trafficking organization with the primary goal of distributing fentanyl pressed to look like oxycodone. (*Id.* at 370.) On balance, this factor weighs in favor of detention.

   **D.**  **Nature and Seriousness of the Danger that the Release Poses**

While mindful of the continued presumption of innocence as to the charged offenses, the Court must evaluate the proffered evidence and arguments in assessing whether the combination of conditions available, including home detention, limited access to electronic devices, and prohibitions against possessing firearms and using alcohol or illegal substances, will reasonably assure the safety of any other person and the community.

Stevenson allegedly distributed large amounts of fentanyl. (Doc. 78 at 358.) Fentanyl is widely known to be lethal to users as well as others who may simply come into contact with it. Here, the fentanyl Stevenson shipped across the country was pressed and colored to make each pill appear as oxycodone. (*Id.*) Stevenson allegedly directed others on their trafficking activity and the manner in which they were to return drug proceeds to him. (*Id.* at 361, 370, 373–74.) That Stevenson was able to direct co-conspirators multiple states away, mostly in the Cleveland, Ohio area, leads this Court to conclude that location, device, and substance abuse restrictions would not reasonably assure this Court that his release could be done in any manner that would ensure the safety of others or the community.

Having conducted a *de novo* review of the record, and after considering the statutory requirements along with Stevenson's arguments for pretrial release, the Court concludes the government has met its burden. All statutory factors weigh in favor of detention.

## III. Conclusion

For the reasons stated above, Defendant King Stevenson's Appeal of the Detention Order is DENIED. Stevenson will remain in the custody of the U.S. Marshal during the pendency of this case.

**IT IS SO ORDERED.**

Date: February 5, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE